UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:12-CR-1 |
| | ) | |
| RONNIE SHANE CAMPBELL | ) | |

REPORT AND RECOMMENDATION

Defendant Campbell has filed a motion to suppress [Doc. 30], which is before this Magistrate Judge for a report and recommendation under 28 U.S.C. § 636, and the standing orders of this Court. An evidentiary hearing on the motion was held on May 21, 2012.

The vehicle which defendant Campbell was driving was stopped for speeding on Interstate 26 in Washington County, Tennessee at approximately 12:24 p.m., on December 8, 2011, by Trooper William Shelton of the Tennessee Highway Patrol. This was not a pretextual traffic stop, but was based solely upon the fact that Trooper Shelton ascertained by his radar that the defendant's vehicle was driving in excess of the posted speed. Defendant does not argue otherwise. However, defendant asserts that the traffic stop was unreasonable in scope and thus violative of the 4th Amendment. He argues that the original purpose of the traffic stop was satisfied, and that defendant was unlawfully detained without Trooper Shelton having "obtained additional information amounting to reasonable suspicion to believe that criminal activity [was] afoot."

The Court has reviewed the video recording taken by the camera in Trooper Shelton's cruiser. The time line of events is accurately summarized, with one minor exception set out below, in the government's response, doc. 34, as follows:

12:24:56            White Honda Accord passes THP cruiser parked on shoulder of I-26 W.

| | |
|---|---|
| | Trooper Shelton initiates pursuit. |
| 12:25:43 | Vehicles stop near mile marker 18 (between North State of Franklin Road and Boones Creek Road exits). |
| 12:26:00 | Trooper Shelton asks the driver, Ronnie Campbell, for his driver's license. There is a front-seat passenger later identified as Warner Ken Howell. Shelton advises Campbell that he has been stopped for speeding. Campbell says they have come from North Carolina. When Shelton asks where they are headed, Campbell says Johnson City (although Campbell has already driven by the Johnson City exits). |
| 12:27:08 | Trooper Shelton calls in the Honda's tag. |
| 12:29:09 | Trooper Shelton calls in Campbell's driver's license number. Shelton continues to observe Howell frequently looking in the rear view mirror. |
| 12:36:10 | The dispatcher advises Trooper Shelton that Campbell has a probation "attachment" that requests Campbell's probation officer be contacted if Campbell has law enforcement contact. |
| 12:40:00 | Trooper Shelton answers a call on his mobile phone and speaks with Trooper Patrick Nienast. Shelton says "I have a guy that's on federal probation out of Kentucky and South Carolina, I think it is. There's two of them. The passenger's really fidgeting around and real nervous. I don't know if they want them or not, but I'm going to try to do a vehicle search anyway."[1] |
| 12:44:50 | Trooper Shelton gets back out of his cruiser and goes to the passenger window. Trooper Shelton asks Howell if he has any identification. Howell says "yes sir, but it's back in the motel, though." Trooper Shelton asks "what motel you staying at?" and Howell is evasive. Campbell volunteers "I'm on probation" and asks Trooper Shelton "has something showed up on me?" Howell says they are staying at the Holiday Inn. Trooper Shelton asks about their business; they say they sell ads to car dealerships and that was why they were in Johnson City. |
| 12:46:40 | Trooper Shelton returns to his cruiser. Trooper Shelton speaks to the dispatcher about contacting Campbell's probation officer. |
| 12:47:50 | Trooper Shelton receives a call on his mobile phone and speaks with U.S. Probation Officer John Marshall Bunch in Columbia, South Carolina. |

---

[1] This is the only discrepancy between the video and the government's summarization, which quotes Trooper Shelton as saying "I'm going to do a vehicle search anyway."

2

|          | Trooper Shelton tells Bunch "they give me a story that they're up here selling advertising for car dealerships. Real fidgety." Trooper Shelton asks about information from the computer on "forgery and stuff." Bunch advises Shelton that Campbell did not have permission to be in Tennessee and that Bunch wanted to speak with Campbell. |
|---|---|
| 12:49:40 | Trooper Shelton gets back out of his cruiser. Shelton motions for Campbell to get out of the car and step back to the front of the cruiser. Trooper Shelton hands Campbell the mobile phone so he can speak with Bunch. Campbell speaks with Bunch on phone and tells him "I had to run up here to see this dealer today." Campbell hands the phone back to Trooper Shelton, and Shelton talks some more with Bunch. |
| 12:51:10 | Trooper Shelton tells Campbell that he is going to issue him a citation for speeding. As Campbell signs the ticket, he questions Trooper Shelton again about "when you run my name, what all shows up?" Trooper Shelton asks "how long have you been on probation? Campbell falsely answers "two years." [Campbell had been released from federal custody in June 2011]. Campbell acts very nervously. Trooper Shelton asks Campbell "how long have you been in Johnson City?" Campbell says "we just drove up here today." Campbell asks Shelton where "Grindstaff" is. Trooper Shelton indicates that it is back the other way. [Grindstaff, Inc. has car dealerships in Elizabethton and at 3608 Bristol Highway, Johnson City, Tennessee]. Shelton returns Campbell's license and registration to him with the citation. |
| 12:52:10 | Trooper Shelton asks who's car it is, and Campbell says it is his and his brother's. Trooper Shelton asks "any luggage?" Campbell says "at the hotel." Trooper Shelton asks "is there anything in it [the car] illegal?" Campbell says "no, sir." Trooper Shelton asks "any weapons?" Campbell says "I can't have no weapons." Trooper Shelton asks Campbell about Howell. Campbell says his probation officer told him he has to come see him the next morning. Trooper Shelton asks Campbell to turn around for a very brief pat down. |
| 12:53:10 | Trooper Shelton and Campbell step to grassy shoulder out of camera view. Trooper Shelton asks Campbell about any medication in the vehicle. Trooper Shelton asks again "nothing illegal in the vehicle whatsoever?" Campbell says "no sir." Trooper Shelton asks Campbell "any problem with us searching it?" Campbell says "uh unh." Trooper Shelton asks Campbell what he is on probation for. Campbell says forgery. Trooper Shelton tells Campbell to stay at front of cruiser while he steps back to passenger window to talk to Howell. |
| 12:53:55 | Trooper Shelton talks to Howell. Shelton asks Howell again about |

3

identification. Howell is evasive. Trooper Shelton asks Howell for his full name, date of birth, and Social Security number and has Howell write it down. Shelton asks Howell about who owns the car. Shelton also asks Howell about any prior charges; Howell says "nothing I've been convicted of." Howell claims he is licensed in California and says he had license in North Carolina. Trooper Shelton asks Howell if he lives in South Carolina, and Howell says he lives in California.

12:56:40  Trooper Shelton steps back to his cruiser. Shelton tells Campbell he will be back in a minute and gets back in the cruiser. Trooper Shelton calls the dispatcher for a check on Howell. The dispatcher responds. Trooper Shelton asks if the dispatcher can get a California driver's license photo.

13:01:06  Trooper Shelton gets back out of his cruiser. Trooper Shelton asks Campbell "how long have you worked with that buddy of yours?" Campbell says "I've known him about six years." Trooper Shelton asks "where does he live?" Campbell says "North Carolina." Trooper Shelton asks again if there is anything illegal in the vehicle.

[At some point, Trooper Patrick Nienast arrives in his cruiser.]

13:01:36  Trooper Shelton has Campbell step to the shoulder. Shelton goes up and has Howell step out of the car. Trooper Shelton asks Howell if he has any weapons. Trooper Shelton does a brief pat down of Howell. Howell places the articles from his pockets on the roof of the Honda. Howell shows that he has large wad of cash in his pocket. Howell takes the items off the roof and puts them back in his pockets. Trooper Shelton directs Howell to step back away from the road.

13:02:35  Trooper Shelton begins a search of passenger compartment of Honda. He quickly observes a FedEx envelope addressed from Howell in North Carolina to Campbell in South Carolina stuck between the passenger seat and the center console. The envelope contains envelopes with counterfeit checks and printouts of personal information obtained from AutoLoanLocator.com. Shelton also observes motel key cards in the glove box.

13:04:45  Trooper Shelton asks the dispatcher to have a supervisor call him on his mobile phone.

13:07:10  Trooper Shelton releases the trunk latch from the passenger compartment and moves to the rear of the Honda to search the trunk. Shelton discovers a printer, blank white plastic "magstripe" cards, hologram laminate, and other materials used to make false identification cards.

4

13:08:31          Trooper Shelton steps back to the cruiser and tells Campbell and Howell to get in the rear of the cruisers. [Campbell is placed in the rear of Trooper Shelton's cruiser, and Howell is placed in the rear of Trooper Nienast's cruiser.] Campbell keeps asking "what's the problem?"

[Doc. 36, pgs. 1-5].

To somewhat further compress and summarize the chronology of events of the traffic stop:

(1) Just before 12:26 p.m., defendant is pulled over by Trooper Shelton.

(2) Between 12:26 and 12:36, Trooper Shelton inspects defendant's driver's licence and car registration, and calls in that information to his dispatcher. Those actions are routine and necessary in every traffic stop.

(3) At 12:36, the dispatcher reports to Trooper Shelton that defendant is on probation from a federal court, and that the database viewed by the dispatcher indicates that the supervising probation officer is to be contacted in the event defendant has contact with a law enforcement officer.

(4) Between 12:36 and 12:47, the dispatcher attempts to contact defendant's federal probation officer. During this same time period, defendant volunteers to Trooper Shelton that he is on probation and asks if "something showed up" on him, a rather good indication that defendant knew, at the very least, that his presence in Tennessee was a violation of his court-ordered conditions of supervision.

(5) At 12:48, the probation officer calls Trooper Shelton on his cell phone and they converse. The probation officer confirms that defendant did not have permission to be in Tennessee. The probation officer then talks directly with defendant until nearly 12:51, at which time the probation officer talks more with the trooper.

(6) Between 12:51 and 12:52, Trooper Shelton issues a speeding violation to the defendant. Defendant signs the citation at 12:51:30. As he did so, defendant again asked what information the Highway Patrol's database revealed when defendant's name was keyed in.

(7) At 12:53:10, Trooper Shelton asks for permission to search the car, and defendant gives his permission.

5

Therefore, from the time of the stop to the time the defendant gave his consent to search the car, 28 minutes elapsed.

From the time Trooper Shelton (and defendant) ended their conversations with the federal probation officer to the time the consent was given, only 2 minutes and 10 seconds elapsed. And, lest it be overlooked, some of that time was used in writing the speeding ticket.

From the time defendant signs the ticket and the trooper asks for permission to search the car, 1 minute and 40 seconds elapse, hardly an eternity even in this frenetic age.

The seminal legal principle is straightforward: the length of a vehicle stop for a traffic offense must be reasonable. If the stop persists for a longer time than is necessary to issue the appropriate citation, then any evidence of a crime discovered withing the parameter of the unreasonable period of the stop must be suppressed; *U.S. v. Urrieta,* 520 F.3d 569 (6th Cir. 2008). But, if the totality of the circumstances noted during the time reasonably necessary to issue a citation gives rise to a reasonable suspicion that criminal activity has occurred, or is about to occur, then a further "investigative detention" under *Terry v. Ohio*[2] is justified; *see, U.S. v. Townsend*, 305 F.3d 537 (6th Cir. 2002). With this said, it is unnecessary to decide if Trooper Shelton had a reasonable suspicion, based on articulable facts, that defendant had committed, or was about to commit, a crime, which would have warranted a *Terry* stop, because Trooper Shelton took no more time than was reasonable under the circumstances to issue defendant a citation.

There is no bright-line time limit that determines when a traffic stop meamorphoses

---

[2] 392 US 1 (1968)

Case 2:12-cr-00001-RLJ   Document 44   Filed 05/22/12   Page 6 of 8   PageID #: 159

into a *Terry* stop or an arrest. The reason for that lack is apparent - every traffic stop is different and a myriad of factors unique to that stop must be taken into account. Purely as an example, the nature of the traffic offense will have a direct effect on the length of the stop. Also, whether the defendant resides in- or out-of-state will have an effect. In this case, the "attachment" to defendant's drivers' license in the computerized database indicated that defendant's federal probation officer was to be called if defendant was stopped. Trooper Shelton had two choices: (1) ignore that request of a federal court that its probation officer be contacted; issue the citation; and send defendant on his way; or (2) comply with the request. Trooper Shelton acted reasonably in complying with the request; after all, it was not beyond the realm of possibility that defendant's presence in Tennessee could have constituted a criminal offense.

Therefore, whatever a reasonable length of time may be in this case to have issued a citation to defendant, the clock did not start running until Trooper Shelton and defendant concluded their respective conversations with the probation officer. From the time the clock did start ticking until Trooper Shelton issued the citation was reasonable, even minimal, and less than two more minutes elapsed before defendant gave his consent to search his vehicle. Under the totality of the circumstances, that time was reasonable.[3]

The last issue concerns the validity of the defendant's consent. Trooper Shelton unequivocally testified that defendant was free to leave after he handed defendant the citation. Nothing on the video recording reasonably would indicate to defendant that he was

---

[3]Indeed, as defendant was signing for the ticket, he was lengthening the stop by nervously asking "when you run my name, what all shows up?"

not free to leave, or that he was effectively coerced into consenting to the search.

It is respectfully recommended that defendant's Motion to Suppress [Doc. 30] be DENIED.[4]

Respectfully recommended:

 s/ Dennis H. Inman
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).